Weldon, J.,
delivered the opinion of the court:
This is a suit founded on three contracts executed on the 10th of September, 1897, between the claimant and the United States, for the construction of a levee on the Mississippi River, in the lower levee district, in the State of Mississippi.
There are three contracts containing the same provisions, but embracing different parts of the work. The contracts are made part of the petition as Exhibit A. Under said contracts the claimants obligated themselves to build a large *385 amount of levee embankment, amounting in tlie aggregate to about 215,000 cubic yards. By the terms of such contracts the work was to be finished by January 1, 1898. The contracts were not approved by the Chief of Engineers until September 27, 1897. The parties were much delayed by the prevalence of the yellow fever, which became epidemic on the 17th of September, and continued so until about the 18th of November, 1897. Extensions in time were made by the officer in charge until April 1, 1898, in consequence of the epidemic and the extraordinary condition of weather during the months of December, 1897, January and February, 1898.
It is alleged in the petition that the officer in charge of the work'representing the defendants treated .construction of the levee as an emergency, pushing the work in bad weather to the great prejudice of the claimants, putting on additional force not employed by the claimants, and'charging- the same to the account of claimants, and that the officer unjustly, and in violation of the terms of the contract, interfered with the claimants in the execution.of the contracts.
The result and effect of the alleged interference of the agent of the United States is summarized in the petition as follows:
For forcing the work under unfavorable conditions as of an emergency character_$28, 008. 82
For loss of profits and actual cost to petitioners on the 30,000 yards of work rendered necessary from settling of foundations, for which petitioners were paid nothing _ 7, 800. 00
For loss of profits on work the United States should have permitted petitioners to do," but which it did itself, deducting said amount of work from petitioners’ contracts _ 441.31
For loss of profits petitioners could have made on work ' done at petitioners’ expense, and the excess over 12 cents per cubic yard charged to them by the United States for its doing this work.'-•-_ 2, 894.19
Total_ 39,144. 32
In the early stages of the performance of the work the claimants were delayed for a considerable period of time during the months of October and November by a quaran *386 tine established by the authorities of the State of Mississippi, so that by the 1st of December, 1897, the work was much behind, and then during the month of December the work was very much delayed in consequence of the wet weather of that month. The delays of the work during the time in which the contracts were to be performed are in legal effect eliminated from this controversy by the different extensions of time which were given to the claimants by the officer in charge, which are as follows, to wit: On October 4, 1897, claimants asked for an extension of time for ninety days; on December 21, 1897, contract was extended to February 1, 1898. Upon a, further request the time was extended to February 15, 1898. On February 8, 1898, claimants applied for a further extension to Apinl 1, and on March 8, 18.98, the request was granted.
It is stated in the brief of claimants that “ we base the claim for compensation herein set up upon damages resulting to the claimants by unauthorized interferences after the engineer officer in charge had, in his judgment, held them to be entitled to extensions.” This concession eliminates the question of time extension and places the right of the claimants on this charge of the petition to forcing the work under unfavorable conditions as an emergency character.
In connection with this branch of the case we quote from the forty-seventh section of the specification, which is as follows :
“ 47. Force. — Within ten days after written notice has been given the contractor that he has been awarded the contract, he shall employ‘such force and outfit as, in'the judgment of the engineer in charge, shall be necessary to com-ísete the work within the contract time; and if he shall fail •to maintain this force and outfit, or it becomes evident to the engineer in charge that the work is not being prosecuted with due diligence, and will not be completed in the contract time, he, the engineer in charge, shall have power to employ, at any rate of pay which in his judgment may be necessary, such additional labor and to purchase such additional outfit as may seem essential to insure the completion of the work in the contract time, and place them upon the work, deducting the total cost of the same from any moneys due or to become due the contractor. The contractor shall personally *387 superintend bis work on the ground, or cause it to be done by a responsible and capable representative, and will also, on request of the engineer in charge or his designated agent, discharge any employee detected in violating these specifications.”
It is insisted in this connection that if the claimant had a sufficient force in the judgment of the engineer at the commencement of the work and maintained that force, it was a sufficient compliance with that provision of the contract; and that thereafter the officer in charge would have no right to interfere, although the progress of the work might be such as justified the belief that the work would not be completed within the limitation of the contract. In connection with the clause of the specification on the subject of the force needed in the commencement of the work there occurs the disjunctive provision “ or it becomes evident to the engineer in charge that the work is not being prosecuted with due diligence and will not be completed on contract time, he, the engineer in charge, shall have power to employ at any rate of pay which in his judgment may be necessary to the completion of the work in the contract time and place them upon the work, deducting the total cost of the same from any moneys due or to become due the contractor.” This was done on the by the findings of fact. The mere maintenance of the force which the claimants had when the work was commenced is not sufficient to discharge the claimants from their responsibility to complete the work on time, and does not deprive the officer in charge from the exercise of a reasonable discretion to hire an additional force at the expense of the claimants.
The conclusion of the fifteenth finding states “ it does not appear that the engineer in charge acted in bad faith in requiring the claimants to perform any material portion of the work under unfavorable conditions.”
If the officer in charge had acted in bad faith, in requiring the performance of the work at such times and under such circumstances as to indicate a tyrannical and fraudulent exercise of power, in that case the rights of the claimants in this proceeding would be materially different. The circumstances surrounding the performance of the contract, growing out of a continued and increasing apprehension that the *388 high water would inundate the surrounding country, called for, on the part of the engineer, the exercise of a very delicate and difficult duty, and it is not unreasonable that he should determine that the emergency-required hipi to assist in the completion of the work. By the consent of the engineer the levee board of the State of Mississippi assisted in the performance of the work, the benefit of which was allowed the claimants in the estimate of the work and paid for by the United States.
The next clause of complaint is for loss of profits and actual costs to petitioners on the 30,000 yards of work rendered necessary from settling of foundations, for which petitioners were paid nothing. •
Section 43 of the specifications is as follows:
“43. Settlement of foundations. — Where a levee is constructed across a slough, or at any place where settlement of the soil on which the levee rests is anticipated, the contractor will erect, at his own expense, such structures for determining settlement as the engineer in charge may designate, and shall construct the levee in such a manner as he may prescribe, and for all material used in restoring the sunken portions the contractor shall be paid at the same price per cubic yard as for the original embankment, but he shall receive no compensation unless the instructions and directions of the engineer in charge are fully complied with.”
The twelfth finding is applicable to this branch of the case, which states that the levee was not constructed across the slough or at any place where settlement of soil on which the levee rests was anticipated by either the contractors or the engineer in charge. There was no measurement made by anyone to ascertain whether or not there was any settling, and none could be made unless some'preparations are made previous to the settling, which was not done, and any estimating of a settlement or how much the levee had settled would be purely guesswork. There was no evidence to the engineer in charge that there was any anticipation of settlement. All of the levees, practically, are built on soil that is quite compressible, and the whole of the Mississippi Valley is an alluvial deposit, and resting thereon such an amount of earth'necessarily causes some settlement and shrinkage. *389 For that reason it is provided that levees be built about 10 per cent higher than the intended final grade.
At no time during the progress of the work did the contractors erect the constructions provided for in section 43 of the specifications for determining the settlement of any portion of'the levee covered by the contracts.
After the work has been in progress a considerable time— that is, during the wTet weather that followed the opening of the year 1898 — the contractors claimed that a part of the levee was settling, but in the judgment of the engineer in charge there was no evidence to corroboi’ate their claim.
The third claim of the petition is “ for loss of profits on work the United States should have permitted petitioners to do, but which it did itself, deducting said amount of the work from petitioners’ contract, $441.31.”
This claim is covered by the eleventh finding of fact, the substance of which is that the amount advertised for is 215,000 cubic yards; but the actual amount by whomsoever put up is 216,891. Of that amount the claimants were paid for 207,063 cubic yards at 12-cents per yard, the contract price, or $24,847.56, the remainder, or 9,807 yards, being deducted as the amount done by the wheelbarrow force put on and paid by the Government. Had the claimants been permitted to do the 9,807 cubic .yards their profits thereon would have been $441.31, and this sum we think they are entitled to recover, notwithstanding the benefits accruing to them from the work done by the levee board.
The fourth claim of the petition is “ For loss of profits petitioner could have made on work done at petitioner’s expense and the excess over 12 cents per yard charged to them by the United States for its doing the work.”
The eleventh finding contains a statement of the amount paid the different parties engaged by the officer in charge to assist in the performance of the work in order that the same might be finished within the time limited by the different extensions of the contract.
It is true that the prices paid by the engineer in charge were in some particulars higher than what was being paid by the claimants, but the difference in the amount is not suffi *390 cient to justify the inference that the officer acted in bad faith and dishonestly disregarded the interest of the claimants.
Judgment will be entered for the sum of $441.31, and as to the other items of the claim the petition is dismissed.